

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

# 11 CIV 5585

------------------------------------------------------------- x
:
THE TOPPS COMPANY, INC.,                                      :
:
                              Plaintiff,                      :
:
             - against -                                      :     **COMPLAINT**
:
                                                             :     **JURY TRIAL DEMANDED**
LEAF TRADING CARDS, LLC,                                      :
:
                              Defendant.                      :
------------------------------------------------------------- X

Plaintiff, The Topps Company, Inc. ("Topps"), by its attorneys, Ingram Yuzek Gainen

Carroll & Bertolotti, LLP, for its complaint against defendant, Leaf Trading Cards, LLC

("Leaf"), alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, and 15

U.S.C. § 1121, because this case arises under 17 U.S.C. § 101 *et seq.* and 15 U.S.C. 1051 *et seq.*

This Court has supplemental jurisdiction over the related state law claims under 28 U.S.C.

§§ 1367 and 1338.

2.     This Court has personal jurisdiction over Leaf because Leaf conducts business, or

committed a tort in this district.

3.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c).

## THE PARTIES

4.     Topps is a Delaware corporation with its principal place of business at 1

Whitehall Street, New York, New York 10004.

5.      Upon information and belief, Leaf is a Texas limited liability company with its principal place of business at 15944 Midway Road, Addison, Texas, 75001.  Leaf conducts business in New York and throughout the country through stores, distributors, authorized dealers, and on its www.leaftradingcards.com web site.

## FACTUAL BACKGROUND

6.      Topps is a leading marketer, manufacturer, and distributor of sports and entertainment products, including trading cards, stickers, confectionery products, and related items.

7.      Since 1951, Topps has manufactured and sold trading cards bearing a baseball player's name, signature, likeness, team name, position, and statistics.  Topps' baseball cards, along with its other sports and entertainment trading card products, have become a well-established part of American culture.

### Topps Baseball Cards: Base Cards

8.      During the first few decades of its business, Topps was manufacturing and selling baseball base cards, which are the main card set in a series.

9.      The Topps 1952 Baseball series is one of the Topps baseball trading card products that has reached iconic status in the trading card world.  In particular, the Mickey Mantle card is considered to be one of the most sought after cards in the baseball card hobby history—dubbed by many the "holy grail of baseball card collecting" among the Post-World War II cards.

10.     Below is an image of the Topps 1952 Baseball Mickey Mantle card:



**Mickey Mantle Card from 1952 Baseball**

11.    Below is another Mickey Mantle card from the 1958 Baseball series:



**Mickey Mantle Card from 1958 Baseball**

12.    An image of Topps' 1972 Baseball card featuring Mike Garman, Cecil Cooper, and Carlton Fisk, is reproduced below:



**Mike Garman, Cecil Cooper, and Carlton Fisk Card from 1972 Baseball**

13.    A copy of this card appears in a book called "Topps® Baseball Cards: The Complete Picture Collection (A 35 Year History, 1951–1985)," which is a 1985 publication that compiles all of the card images of historical Topps baseball cards from 1951 to 1985 ("the Baseball Trading Card Book"). The Baseball Trading Card Book was registered by Topps on January 29, 1986, under Reg. No. TX0001730597. This registration is *prima facie* valid under 17 U.S.C. § 410(c). A copy of Topps' registration certificate for the Baseball Trading Card Book is annexed as Exhibit A.

14.    A copy of this card as it appears in the Baseball Trading Card Book is annexed as Exhibit B.

15.    An image of Topps' 1980 Baseball card featuring Ricky Henderson is reproduced below:



**Rickey Henderson Card from 1980 Baseball**

16.     The 1980 Baseball set was duly registered on January 14, 1980, under Reg. No. VA0000046807.  This registration is *prima facie* valid under 17 U.S.C. § 410(c).  A copy of the registration certificate for the 1980 Baseball series is annexed as Exhibit C.

17.     Topps owns a valid and subsisting copyright in all of the cards depicted in the 1980 Baseball cards, including the Rickey Henderson card identified above.

### Topps Bowman and Chrome-Brand Cards

18.     In the past few decades, Topps has been manufacturing and selling its Bowman, Topps Chrome, and Bowman Chrome-brand baseball cards, in addition to its base card series. An image of a Topps 2001 Bowman Chrome Autographed Rookie card featuring Albert Pujols is reproduced below:



**Albert Pujols Autographed Rookie Card from
2001 Bowman Chrome Baseball**

19.     This card image was duly registered with the United States Copyright Office on
July 22, 2011, Reg. No. VA 1-780-927.  A copy of the registration certificate is annexed as
Exhibit D.

20.     An image of Topps' 2002 Bowman Chrome Baseball Autographed Rookie Card
featuring Joe Mauer is reproduced below:



**Joe Mauer Autographed Rookie Card
from 2002 Bowman Chrome Baseball**

21.     This card image was duly registered with the United States Copyright Office on July 22, 2011, Reg. No. VA 1-780-932.  A copy of the registration certificate is annexed as Exhibit E.

22.     An image of Topps' 2005 Bowman Draft Picks & Prospects Baseball Autographed Prospect Card featuring Ryan Braun is reproduced below:



**Ryan Braun Autographed Prospect Card**
**from 2005 Bowman Draft Picks & Prospects Baseball**

23.     This card image was duly registered with the United States Copyright Office on July 22, 2011, Reg. No. VA 1-780-931.  A copy of the registration certificate is annexed as Exhibit F.

24.     An image of Topps' 2010 Bowman Draft Picks & Prospects Baseball Bowman AFLAC Autographed Card featuring Bryce Harper is reproduced below:



**Bryce Harper Bowman AFLAC Autograph Card
from 2010 Bowman Draft Picks & Prospects Baseball**

25.     This card image was duly registered with the United States Copyright Office on

July 22, 2011, Reg. No. VA 1-780-930.  A copy of the registration certificate is annexed as

Exhibit G.

26.     An image of Topps' 2010 Topps Chrome Baseball Autographed Rookie card

featuring Stephen Strasburg is reproduced below:



**Stephen Strasburg Autographed Rookie Card
from 2010 Topps Chrome Baseball**

27.     This card image was duly registered with the United States Copyright Office on July 22, 2011, Reg. No. VA 1-780-928.  A copy of the registration certificate is annexed as Exhibit H.

28.     An image of Topps' 2010 Bowman Baseball USA Baseball Insert Card featuring Bryce Harper is reproduced below:



**Bryce Harper USA Baseball Insert Card from 2010 Bowman Baseball
(later inserted in 2010 Bowman Chrome redemption program as
USA Baseball Buyback Autographed Card)**

29.     This card image was duly registered with the United States Copyright Office on July 22, 2011, Reg. No. VA 1-780-929.  A copy of the registration certificate is annexed as Exhibit I.

30.     And finally, an image of Topps' 2011 Bowman Baseball Autographed Prospect Card featuring Bryce Harper is reproduced below:



**Bryce Harper Autographed Prospect Card
from 2011 Bowman Baseball**

31.    This card image was duly registered with the United States Copyright Office on July 22, 2011, Reg. No. VA 1-780-926. A copy of the registration certificate is annexed as Exhibit J.

<u>**The BOWMAN, BOWMAN CHROME, and TOPPS CHROME Trademarks**</u>

32.    Continuously since in or about 1989, Topps has used the name and mark BOWMAN, and since the mid-1990s, the names and marks BOWMAN CHROME and TOPPS CHROME, extensively in the United States on certain of its trading card products, packaging for its trading card products, and in advertising and promoting of those trading card products in trade and consumer magazines, television, and on the Internet, including its website at www.topps.com.

33.    Topps registered its name and mark BOWMAN, BOWMAN CHROME, and TOPPS CHROME with the United States Patent and Trademark Office ("USPTO") as follows:

| <u>Mark</u> | <u>Reg. No.</u> | <u>Issue Date</u> | <u>First Use</u> | <u>Goods</u> |
| --- | --- | --- | --- | --- |
| BOWMAN | 2,140,078 | Mar. 3, 1998 | Feb. 1, 1989 | Trading cards |

| TOPPS CHROME | 2,251,239 | June 8, 1999 | Nov. 29, 1995 | Trading cards |
| BOWMAN CHROME | 2,265,679 | July 27, 1999 | Nov. 20, 1997 | Trading cards |

34.     These registrations are currently valid, subsisting, in full force and effect, registered on the Principal Trademark Register of the USPTO, and are incontestable under 15 U.S.C. § 1065. A copy of the registration certificates for the above marks is annexed as Exhibit K.

35.     Topps has used the name and mark BOWMAN, BOWMAN CHROME, and TOPPS CHROME extensively and continuously in sales, advertising, and promotion in the United States, and in connection with certain of its sports trading cards for the past two decades. The names BOWMAN, BOWMAN CHROME and TOPPS CHROME are used to identify certain lines of Topps trading cards. Topps has expended substantial time, effort and money to ensure that the purchasing public associates its marks exclusively with Topps and its products.

36.     As a result of its efforts, the name and mark BOWMAN, BOWMAN CHROME, and TOPPS CHROME have become famous, acquired secondary meaning and substantial goodwill, and have come to uniquely identify Topps' products. The name and mark BOWMAN, BOWMAN CHROME, and TOPPS CHROME are assets of incalculable value as a symbol of Topps' high quality entertainment products, including, without limitation, sports trading cards.

37.     The name and mark BOWMAN, BOWMAN CHROME, and TOPPS CHROME appear on all seven of the Bowman, Bowman Chrome, and Topps Chrome-brand baseball cards depicted above.

**Exclusive Rights to Mickey Mantle,**
**Stephen Strasburg, Bryce Harper and Babe Ruth**

38.     Topps currently has an exclusive license to use the name, image, portrait,

likeness, signature, and photograph ("Attributes") of Mickey Mantle, Stephen Strasburg, Bryce

Harper, and Babe Ruth ("Exclusive Players") in the manufacture and sale of trading card

products.

39.     Through these licenses, Topps also acquired the exclusive rights to use the

Exclusive Players' Attributes on Topps' packaging, advertising, and promotional materials for

trading card products.

40.     The Exclusive Players carefully select and control to whom they grant exclusive

licenses, and Topps pays these Exclusive Players highly negotiated dollar amounts to secure

these exclusive rights.  The exclusivity ensures that only Topps (as exclusive licensee) has the

ability to use the Exclusive Players' Attributes on its products.  In this way, the Exclusive

Players are able to control their celebrity and brand image.  Quality control mechanisms are in

place for the use of the Exclusive Players' Attributes on Topps' products, for example, by

granting the Exclusive Player the right to approve a product (or packaging or advertisements

relating to the product) before release.

41.     Procuring exclusive rights is also one way in which trading card companies

generate consumer interest in their products and distinguish their products from competitors'

products.  Given the expense involved with securing exclusivity from rights holders, Topps is

very careful and deliberate when making these financial decisions.  Without exclusivity, the

license's value is highly diminished both to Topps and to the Exclusive Players.

42.     Topps' exclusive license with each of the Exclusive Players is a matter of public

knowledge, of which manufacturers, distributors, retailers, and card collectors in the baseball

card industry have constructive knowledge.  Copies of public announcements of the exclusive license relationship between Topps and each Exclusive Player are annexed as Exhibit L.

43.     Topps' licenses for these players are currently valid, subsisting, and in full force and effect.

### Leaf's Violations of Law

44.     Upon information and belief, Leaf is a trading card company established in 2010 and is a Topps competitor.  It manufactures and sells trading cards, sells autographed sports memorabilia, and resells trading cards purchased in the secondary market, known in the industry as "buyback cards."

45.     On July 14, 2010, Topps sent to the Razor Entertainment Group ("Razor"), Leaf's predecessor or affiliate owned by Leaf's current President, Brian Gray, a letter demanding that it cease using Topps' Stephen Strasburg card on Razor's sell sheet to promote Razor's "Rookie Retro" product.  The Rookie Retro product consisted of buyback cards featuring baseball rookies.  At the time, Stephen Strasburg was an extremely popular baseball rookie and Topps was clearly the exclusive trading card licensee of Stephen Strasburg.  A copy of Razor's sell sheet for the Rookie Retro product is annexed as Exhibit M.

46.     On July 15, 2010, Razor, through its counsel, denied any wrongdoing but agreed to cease using the sell sheet and stated that it would destroy any uncirculated copies.

47.     Approximately a year later, on July 2, 2011, Topps discovered that Leaf is again using certain of Topps' card images, and the Attributes of Topps' Exclusive Players, on a sell sheet (the "Leaf Sell Sheet") for its 2011 "Best of Baseball" product.  A copy of the Leaf Sell Sheet is annexed as Exhibit N.  Like the Rookie Retro product, the Best of Baseball product contains buyback cards from the secondary market, as well as its own Leaf-brand cut signature

cards (a cut signature card is a card containing an autograph that was cut from another document or piece of cardboard).

48.     Upon information and belief, Leaf has distributed the Leaf Sell Sheet digitally to customers of baseball trading cards and other stores that buy these types of products.  Leaf's prominent featuring and overuse of Topps' card images, Topps' copyright and trademark rights, and the Exclusive Players' Attributes to advertise and promote its 2011 Best of Baseball product, is a blatant attempt at capitalizing on Topps' goodwill and intellectual property to advertise and promote Leaf's product.

49.     The Leaf Sell Sheet contains 18 card images, 11 of which are Topps cards, both historic and recent, from Topps' 1952 Baseball, 1958 Baseball, 1972 Baseball, 1980 Baseball, 2001 Bowman Chrome Baseball, 2002 Bowman Chrome Baseball, 2005 Bowman Draft Picks & Prospects Baseball, 2010 Bowman Draft Picks & Prospects Baseball, 2010 Topps Chrome Baseball, 2010 Bowman Baseball, and 2011 Bowman Baseball series.  Seven of the 11 cards contain the name and mark of one of Topps' trademarks BOWMAN, BOWMAN CHROME, or TOPPS CHROME on the card.  And, the 11 Topps cards that Leaf selected to reproduce on the Leaf Sell Sheet are cards that are highly celebrated and sought after by card collectors.  The iconic Mickey Mantle 1952 Baseball card is featured at the top right-hand corner in a way that is larger and more noticeable than any of the other cards, including Leaf's own cards.

50.     In contrast, the card images of competitor baseball card companies (and Leaf's own cards) are featured less prominently on the Leaf Sell Sheet.  Four of the card images appearing on the Leaf Sell Sheet are those of The Upper Deck Company LLC; one card image is of Leaf's predecessor from decades ago, before Brian Gray acquired rights to the LEAF name; and two of the card images are those of Leaf's own cut signature cards.  Thus, the Topps card

images reproduced on the Leaf Sell Sheet far outnumber and are featured more prominently than the cards of the other card companies, including Leaf's own cards—an 11:2 ratio to be exact, positioning Leaf's product as something that capitalizes on Topps, and confusing the consumer in the process.

51.     Further, of the 11 Topps cards reproduced on the Leaf Sell Sheet, three of them are Topps cards from the 2010 Bowman Draft Picks & Prospects Baseball, 2010 Bowman Baseball, and 2011 Bowman Baseball featuring Bryce Harper's name, image, and autograph. Bryce Harper, the 2010 first draft pick and a very popular player, is one of the Exclusive Players with whom Topps has an exclusive license to use his Attributes for the advertising and promotion of Topps' trading card products.

52.     Of the 11 Topps cards reproduced on the Leaf Sell Sheet, one of the cards is also a Topps card from 2010 Topps Chrome Baseball featuring Stephen Strasburg's name, image, and autograph.  As mentioned, Stephen Strasburg is also one of Topps' Exclusive Players.

53.     Leaf's use of Stephen Strasburg's Attributes is particularly egregious given that just last year, Leaf (as Razor) agreed to stop using a sell sheet for its Rookie Retro product that contained an image of Topps' Stephen Strasburg card.  Despite its prior agreement to stop using that sell sheet to promote its product, approximately a year later, Leaf is making the same use in blatant disregard of Topps' rights.

54.     Two of the 11 Topps cards reproduced on the Leaf Sell Sheet are also cards from the Topps 1952 and 1958 Baseball featuring Mickey Mantle's name, image, and autograph. Mickey Mantle is one of Topps' Exclusive Players.  As mentioned, the image of Mickey Mantle from the 1952 Baseball series is reproduced more largely and prominently at the top right hand corner of the Leaf Sell Sheet than the rest of the cards.

55.     Finally, the Leaf Sell Sheet also contains the name, image, and autograph of Babe Ruth, who is also one of Topps' Exclusive Players.

56.     Leaf had actual knowledge of Topps' exclusive rights to use Stephen Strasburg's Attributes to advertise and promote trading card products, because Topps previously sent Razor a letter demanding that it stop using Stephen Strasburg's card to advertise its Rookie Retro product.

57.     Leaf further had constructive knowledge of Topps' exclusive rights to use Mickey Mantle, Bryce Harper, and Babe Ruth's Attributes to advertise and promote trading card products.

58.     Upon information and belief, because the bulk of the Topps card images reproduced on the Leaf Sell Sheet are highly sought after cards, consumer attention and interest in the 2011 Best of Baseball product is likely to be diverted to, and piqued by, the Topps cards in the first instance.

59.     The large number and prominence of how the Topps cards are featured on the Leaf Sell Sheet creates both an appearance and an overall impression that the 2011 Best of Baseball product is a Topps product, or that it is Topps sponsored, endorsed, authorized, or approved.

60.     Leaf's prominent featuring and overuse of Topps' card images, and its use of the Exclusive Players' Attributes to advertise and promote its 2011 Best of Baseball product, is a blatant attempt at capitalizing on Topps' goodwill, intellectual property, and lawfully obtained rights to advertise and promote Leaf's product.  Leaf is impermissibly using Topps' goodwill, Topps' intellectual property rights, and the Attributes of Topps' Exclusive Players in connection

with, and to bolster, the sales of its 2011 Best of Baseball product, and to increase the sales of its

own cut signature cards contained in the 2011 Best of Baseball product.

61.     Leaf's conduct infringes on and misappropriates Topps' copyright and trademark

rights, and violates Topps' exclusive right to use the Exclusive Players' Attributes in connection

with the advertising and promotion of sports trading card products.

62.     Topps objects to the Leaf Sell Sheet and all other advertising and promotion that

bear Topps' intellectual property or exclusive rights, or advertising and promotion that are

designed to cause confusion between Topps and Leaf.

63.     Topps has not granted, nor has Leaf sought, a license or authorization from Topps

to advertise and promote Leaf's 2011 Best of Baseball product, or any other product using

Topps' cards.

## COUNT ONE

### Federal Copyright Infringement (17 U.S.C. § 106)

64.     Topps repeats and realleges the preceding paragraphs of this complaint.

65.     The card designs for 1972 Baseball, 1980 Baseball, 2001 Bowman Chrome

Baseball, 2002 Bowman Chrome Baseball, 2005 Bowman Draft Picks & Prospects Baseball,

2010 Bowman Draft Picks & Prospects Baseball, 2010 Topps Chrome Baseball, 2010 Bowman

Baseball, and 2011 Bowman Baseball series ("Topps Card Designs") are Topps' original

designs.

66.     Topps has always been the sole owner and proprietor of all right, title and interest

in the Topps Card Designs.  The copyrights in the 1972 Baseball, 1980 Baseball, 2001 Bowman

Chrome Baseball, 2002 Bowman Chrome Baseball, 2005 Bowman Draft Picks & Prospects

baseball, 2010 Bowman Draft Picks & Prospects Baseball, 2010 Topps Chrome Baseball, 2010

Bowman Baseball, and 2011 Bowman Baseball card designs have been duly registered with the United States Copyright Office, and are currently valid, subsisting, and in full force and effect.

67.     Leaf had access to, and intentionally copied, the Topps Card Designs on the Leaf Sell Sheet in bad faith to evoke and cash-in on the goodwill associated with those card designs.

68.     The images of the Topps Card Designs reproduced on the Leaf Sell Sheet are identical to Topps' actual cards from those years.

69.     Leaf's conduct violates Topps' exclusive rights under 17 U.S.C. § 106(1), (2), (3), and (5).

70.     As a proximate result of Leaf's conduct, Topps has suffered and will continue to suffer great damage to its business, goodwill, reputation and profits.

71.     By reason of Leaf's unlawful conduct, Topps has been substantially injured and is entitled to damages and Leaf's profits attributable to Leaf's wrongful acts, which are presently indeterminate, the costs of this action, and attorneys' fees.

### COUNT TWO

### Federal Trademark Infringement (15 U.S.C. § 1114(1))

72.     Topps repeats and realleges the preceding paragraphs of this complaint.

73.     For approximately the last two decades, Topps has been using the name and mark BOWMAN, BOWMAN CHROME, and TOPPS CHROME in connection with its trading card products.  Topps duly registered these marks with the USPTO under Reg. No. 2,140,078, 2,251,239, and 2,265,679, and these registrations are now incontestable.

74.     Due to the prevalent use of the name and mark BOWMAN, BOWMAN CHROME, and TOPPS CHROME to refer to Topps' business and products, the name and mark

BOWMAN, BOWMAN CHROME, and TOPPS CHROME have achieved widespread secondary meaning.

75.     Leaf has, without consent from Topps, intentionally and knowingly used and reproduced in interstate commerce Topps' card images bearing Topps' name and mark BOWMAN, BOWMAN CHROME, and TOPPS CHROME in the Leaf Sell Sheet, in bad faith to evoke and cash-in on the goodwill associated with Topps in order to bolster the sales of its 2011 Best of Baseball product.

76.     Leaf's prominent featuring and overuse of Topps cards bearing the name and mark BOWMAN, BOWMAN CHROME, and TOPPS CHROME on the Leaf Sell Sheet, where 11 out of 18 card images are those of highly sought after Topps cards, is likely to cause consumer confusion, or to cause mistake or to deceive as to source, sponsorship, endorsement, or authorization of Leaf's competing product.

77.     Leaf's conduct has caused, and will continue to cause, damage and injury to Topps' business, goodwill, and reputation.

78.     Leaf's conduct constitutes trademark infringement in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

79.     As a proximate result of Leaf's conduct, Topps has suffered and will continue to suffer great damage to its business, goodwill, reputation and profits.

80.     By reason of Leaf's unlawful conduct, Topps has been substantially injured and is entitled to damages and Leaf's profits attributable to Leaf's wrongful acts, which are presently indeterminate, the costs of this action, and attorneys' fees.

## COUNT THREE

### Federal False Designation of Origin (15 U.S.C. § 1125(a))

81.     Topps repeats and realleges the preceding paragraphs of this complaint.

82.     Topps has built a substantial commercial advantage through consistent use and promotion of its name and mark BOWMAN, BOWMAN CHROME, and TOPPS CHROME, and its cards.

83.     Leaf's prominent featuring and overuse of Topps' highly sought after cards bearing the name and mark BOWMAN, BOWMAN CHROME, and TOPPS CHROME, and the images of 11 of Topps' cards on the Leaf Sell Sheet, is likely to confuse, mislead, and deceive members of the public into believing that Leaf's 2011 Best of Baseball product originates, is sponsored, endorsed, and/or is approved by, affiliated with, or otherwise connected to Topps. Such actions trade unfairly upon Topps' marks and cards, and misappropriate the goodwill that Topps has expended time, labor, and money to create over time.

84.     Leaf's actions in prominently featuring and overusing Topps' highly sought after cards bearing the name and mark BOWMAN, BOWMAN CHROME, and TOPPS CHROME, and the images of 11 of Topps' cards, constitute a misappropriation of a commercial advantage belonging to Topps.

85.     Upon information and belief, Leaf engaged in these acts willfully for the purpose of unfairly competing with Topps and to injure and damage Topps and its business.

86.     Leaf's conduct constitutes unfair competition, false designation of origin, and passing off in violation of § 32(1) of the Lanham Act, 15 U.S.C. 1125(a).

87.     As a proximate result of Leaf's conduct, Topps has suffered and will continue to suffer great damage to its business, goodwill, reputation and profits.

88.     By reason of Leaf's unlawful conduct, Topps has been substantially injured and is entitled to damages and Leaf's profits attributable to Leaf's wrongful acts, which are presently indeterminate, the costs of this action, and attorneys' fees.

### COUNT FOUR

### Common Law Trademark Infringement

89.     Topps repeats and realleges the preceding paragraphs of this complaint.

90.     By the conduct described above, Leaf has intentionally engaged in acts of trademark infringement in violation of the common laws of New York.

91.     Leaf intentionally and knowingly used Topps' cards bearing the names and marks BOWMAN, BOWMAN CHROME, and TOPPS CHROME on its Leaf Sell Sheet in bad faith to evoke and cash-in on the goodwill associated with Topps in order to bolster the sales of its 2011 Best of Baseball product.

92.     Leaf's prominent featuring and overuse of Topps' cards bearing the names and marks BOWMAN, BOWMAN CHROME, and TOPPS CHROME is likely to cause consumer confusion, or to cause mistake or to deceive as to source, sponsorship, or authorization of Leaf's competing product.

93.     Leaf's conduct has caused and will continue to cause damage and injury to Topps' business, goodwill, and reputation.

94.     By reason of Leaf's unlawful conduct, Topps has been substantially injured and is entitled to damages and Leaf's profits attributable to Leaf's wrongful acts, which are presently indeterminate, the costs of this action, and attorneys' fees.

## COUNT FIVE

### Common Law Unfair Competition

95.     Topps repeats and realleges the preceding paragraphs of this complaint.

96.     By the conduct described above, Leaf has intentionally engaged, with bad faith, and is continuing to engage in acts of unfair competition by misappropriating the skills, expenditures, and labor of Topps, in violation of the common laws of New York.  These acts include Leaf's knowing use of the Topps trading card images that contain the Attributes of Topps' Exclusive Players, despite its actual and constructive knowledge of Topps' exclusive rights.

97.     Leaf's conduct has caused and will continue to cause damage and injury to Topps' business, goodwill, and reputation.

98.     By reason of Leaf's unlawful conduct, Topps has been substantially injured and is entitled to damages and Leaf's profits attributable to Leaf's wrongful acts, which are presently indeterminate, the costs of this action, and attorneys' fees.

## COUNT SIX

### Injunction

99.     Topps repeats and realleges the preceding paragraphs of this complaint.

100.    Leaf's infringement of Topps' trademarks, and Topps Card Designs, as described above, is causing irreparable injury to Topps' trade, business reputation, goodwill, and profits.  This infringement will continue to cause irreparable injury unless restrained by this Court.

101.    Topps has no adequate remedy at law.

102.    Topps is entitled to preliminary and permanent injunctive relief, enjoining and restraining Leaf's wrongful use of Topps' trademarks and Topps Card Designs, and other wrongful

and unlawful acts on the Leaf Sell Sheet and on any other advertising or promotion of Leaf products.

**WHEREFORE**, Topps asks for the following relief against Leaf:

A.      Under 15 U.S.C. § 1116 and 17 U.S.C. § 502, preliminarily and permanently enjoining Leaf, its officers, directors, principals, agents, servants, employees, subsidiaries, affiliates, successors and assigns, and all those in active concert or participation with any of them, from:

i.   Using the name and mark BOWMAN, BOWMAN CHROME, or TOPPS CHROME, or any other mark, image, or designation confusingly similar to a name or mark owned by Topps in the promotion, advertising, or offering for sale of the 2011 Best of Baseball product, or any good or service;

ii.   Using the Topps Card Designs, or any other design or image that is similar to the Topps Card Designs in the promotion, advertising, or offering for sale of the 2011 Best of Baseball product, or any good or service;

iii.   Registering, imitating, copying, or making unauthorized use of the mark BOWMAN, BOWMAN CHROME, or TOPPS CHROME in a manner likely to cause confusion, deception, or mistake on or in connection with the manufacture, reproduction, distribution, adaptation, advertisement, promotion, offering for sale, or sale of any products not manufactured by Topps, or not authorized by Topps;

iv.   From representing, suggesting in any manner to any third party, or performing any act that may give rise to the belief that Leaf, or any of its products, are authorized or sponsored by Topps;

v.   From passing off, inducing, or enabling others to sell or pass off any goods as products produced by Topps that are not, in fact, genuine Topps products, or not produced under the control and supervision of Topps and approved by Topps;

vi.   From otherwise competing unfairly with Topps in any manner;

B.   Directing Leaf under 15 U.S.C. § 1116(a) to file with the Court and serve upon Topps within 30 days of the entry of injunction a written report under oath or affirmed under penalty of perjury stating in detail the form and manner in which it has complied with the injunction;

C.   Granting to Topps actual damages in an amount to be determined at trial under 17 U.S.C. § 504 and 15 U.S.C. § 1117;

D.   Granting to Topps statutory damages in an amount to be determined at trial under 17 U.S.C. § 504;

E.   Granting to Topps Leaf's profits in an amount to be determined at trial under 17 U.S.C. § 504 and 15 U.S.C. § 1117;

F.   Punitive damages in an amount to be determined at trial;

G.   Pre-judgment and post-judgment interest on each and every damage award;

H.   Directing Leaf to deliver to the Court for destruction all prints, packages, dies, wrappers, plates, molds, matrices, and advertisements in its possession, custody or control relating to its 2011 Best of Baseball product, or any other advertising bearing the names and marks BOWMAN, BOWMAN CHROME, TOPPS CHROME, or the Topps Card Designs, under 17 U.S.C. § 503 and 15 U.S.C. § 1118;

I.   The costs and disbursements of this action, including reasonable attorneys' fees, under 17 U.S.C. § 505 and 15 U.S.C. § 1117; and

J.     Such other and further relief as to the Court appears just and proper.

Dated: New York, New York
       August 11, 2011

**INGRAM YUZEK GAINEN CARROLL
& BERTOLOTTI, LLP**
Attorneys for Plaintiff, The Topps Company, Inc.

By: _____
        David G. Ebert
        Mioko C. Tajika
      250 Park Avenue, 6th Floor
      New York, New York 10177
      Tel: (212) 907-9600