**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE TOPPS COMPANY, INC., <br><br>         Plaintiff/ <br>         Counterclaim-Defendant, <br><br>    -against- <br><br> LEAF TRADING CARDS, LLC, <br><br>         Defendant/ <br>         Counterclaim-Plaintiff. | Case No: 11 Civ. 5585 (DAB)(KNF) <br> ECF CASE <br><br> <u>**ANSWER AND COUNTERCLAIM**</u> <br><br> <u>**JURY TRIAL DEMANDED**</u> |

Defendant Leaf Trading Cards, LLC ("Leaf" or "Defendant") by its attorneys Glast, Phillips & Murray, P.C. and SorinRoyerCooper LLC, hereby submits its answer to the Complaint (the "Complaint") of Plaintiff The Topps Company, Inc. ("Topps" or "Plaintiff").

<u>**JURISDICTION AND VENUE**</u>

1. Leaf admits that this Court has subject matter jurisdiction over this action as alleged in Paragraph 1 of the Complaint for products that are validly registered with the United States Register of Copyrights. Leaf admits that this Court has supplemental jurisdiction over the related common law claims as alleged in Paragraph 1 of the Complaint. Leaf denies the remaining allegations in Paragraph 1 of the Complaint.

2. In response to Paragraph 2 of the Complaint and solely for the purposes of this action, Leaf does not contest that it is subject to personal jurisdiction in this District. Leaf admits that it has conducted business in this District, but denies that it has committed a tort in this or any other District. Leaf denies any remaining allegations in Paragraph 2 of the Complaint.

3. In response to Paragraph 3 of the Complaint and solely for the purposes of this

action, Leaf does not contest that venue is proper in this District as alleged in Paragraph 3 of the Complaint.

## PARTIES

4.      Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 4 of the Complaint.

5.      Leaf admits that it is a Texas limited liability company with its principal place of business at 15944 Midway Road, Addison, Texas 75001.  Leaf further admits that it conducts business in New York and elsewhere in the country and on www.leaftradingcards.com.  Leaf denies the remaining allegations in Paragraph 5 of the Complaint.

## FACTUAL BACKGROUND

6.      Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 6 of the Complaint.

7.      Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 7 of the Complaint.

### Topps Baseball Cards: Base Cards

8.      Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 8 of the Complaint.

9.      Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 9 of the Complaint.

10.      Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 10 of the Complaint.

11.      Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 11 of the Complaint.

12. Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 12 of the Complaint.

13. Leaf states that the allegation in Paragraph 13 of the Complaint regarding 17 U.S.C. § 410(c) states a legal conclusion to which no response is required. Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 13 of the Complaint.

14. Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 14 of the Complaint.

15. Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 15 of the Complaint.

16. Leaf states that the allegation in Paragraph 16 of the Complaint regarding 17 U.S.C. § 410(c) states a legal conclusion to which no response is required. Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 16 of the Complaint.

17. Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 17 of the Complaint.

**Topps Bowman and Chrome – Brand Cards**

18. Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 18 of the Complaint.

19. Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 19 of the Complaint.

20. Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 20 of the Complaint.

21.     Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 21 of the Complaint.

22.     Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 22 of the Complaint.

23.     Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 23 of the Complaint.

24.     Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 24 of the Complaint.

25.     Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 25 of the Complaint.

26.     Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 26 of the Complaint.

27.     Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 27 of the Complaint.

28.     Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 28 of the Complaint.

29.     Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 29 of the Complaint.

30.     Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 30 of the Complaint.

31.     Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 31 of the Complaint.

**The BOWMAN, BOWMAN CHROME, and TOPPS CHROME Trademarks**

32.  Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 32 of the Complaint.

33.  Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 33 of the Complaint.

34.  Leaf states that the allegation in Paragraph 34 of the Complaint regarding 15 U.S.C. § 1065 and any legal effect of the purported registrations states a legal conclusion to which no response is required.  Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 34 of the Complaint.

35.  Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 35 of the Complaint.

36.  Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 36 of the Complaint.

37.  Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 37 of the Complaint.

**Exclusive Rights to Mickey Mantle,
Stephen Strasburg, Bryce Harper and Babe Ruth**

38.  Leaf states that the allegation in Paragraph 38 of the Complaint states a legal conclusion to which no response is required.  Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 38 of the Complaint.

39.  Leaf states that the allegation in Paragraph 39 of the Complaint states a legal conclusion to which no response is required.  Leaf lacks knowledge or information sufficient to

form a belief as to the truth or falsity of the remaining allegations in Paragraph 39 of the Complaint.

40.     Leaf states that the allegation in Paragraph 40 of the Complaint states a legal conclusion to which no response is required. Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 40 of the Complaint.

41.     Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 41 of the Complaint.

42.     Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 42 of the Complaint.

43.     Leaf states that the allegation in Paragraph 43 of the Complaint states a legal conclusion to which no response is required.

### Leaf's Violations of Law

44.     Leaf admits the allegations in Paragraph 44 of the Complaint.

45.     Leaf admits that Topps sent a July 14, 2010 letter to Razor, that the Rookie Retro product included baseball buyback cards, and that Stephen Strasburg was an extremely popular baseball rookie. Leaf denies that Razor was a predecessor or affiliate of Leaf owned by Brian Gray, and denies that Topps was clearly the exclusive trading card licensee of Stephen Strasburg. Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 45 of the Complaint.

46.     Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 46 of the Complaint.

47.     Leaf lacks knowledge or information sufficient to form a belief as to the truth or

falsity of the allegation in Paragraph 47 of the Complaint regarding when Topps learned of Leaf's sell sheet for the Best of Baseball product. Leaf admits that it produced a sell sheet for its 2011 "Best of Baseball" product and that the Best of Baseball product contains buyback cards from the secondary market and Leaf's own cut signature cards. Leaf denies that Exhibit "N" is a true and correct copy of the sell sheet. Specifically, Topps omitted from Exhibit "N" (i) Leaf's logo in the bottom-left corner of the sell sheet, and (ii) all of the following language on the sell sheet under the bottom row of photographs on the sell sheet:

**For orders please call Brian at 214-393-4510 or e-mail orders@leaftradingcards.com**

**15944 Midway Road, Addison, Texas 75001, Leaf is the TM of Leaf Trading Cards. Design, content and checklist is subject to change. Signatures are examples/facsimiles only, actual card styles may differ after production. Printed in the USA.**

**VISIT OUR WEBSITE at www.leaftradingcards.com**

**All cards pictured and included in the buyback portion of the product were obtained on the open market by Leaf Trading Cards and are officially licensed goods to extent necessary by law. Leaf in no way asserts or implies the endorsement of any personality depicted on these cards, the leagues or organizations who originally licensed these cards, nor the respective original manufacturers of these cards.**

A true and correct copy of the complete Leaf sell sheet is attached hereto as Exhibit "A" and incorporated herein by reference. Leaf denies the remaining allegations in Paragraph 47 of the Complaint.

48.	Leaf states that the allegations in Paragraph 48 of the Complaint related to "Topps' card images, Topps' copyright and trademark rights, and the exclusive Players' Attributes" state a legal conclusion to which no response is required. Leaf admits that it e-mailed the sell sheet to Leaf dealers and distributors. Leaf denies the remaining allegations in Paragraph 48 of the Complaint.

49.	Leaf states that the allegation in Paragraph 49 of the Complaint that certain

images and cards contain the name and mark of one of Topps' trademarks states a legal conclusion to which no response is required. Leaf admits that 11 of the cards on the sell sheet were produced by Topps and that 7 of those cards contain the words Bowman, Bowman Chrome, or Topps Chrome. Leaf admits that all of the non-Leaf cards on the sell sheet are highly celebrated and sought after by card collectors. Leaf admits that the image of the Mickey Mantle baseball card on the sell sheet is larger than the other non-Leaf cards on the sell sheet. Leaf denies that only card images are posted on the sell sheet. Rather each of the non-Leaf cards is actually a card that was (i) purchased by Leaf on the secondary market, (ii) graded by an expert with Professional Sports Authenticator ("PSA") or Beckett Grading Services ("BGS"), and (iii) slabbed (i.e., encapsulated in a plastic tamper-evident) case by PSA or BGS. Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 49.

50.     Leaf admits that four of the card images on the sell sheet were produced by the Upper Deck Company, one of the card images was produced by Leaf's predecessor decades ago, and two of the images are of Leaf's cut signature cards. Leaf denies that only card images are posted on the sell sheet; rather, each of the non-Leaf cards on the sell sheet is actually a card that was (i) purchased by Leaf on the secondary market, (ii) graded by an expert with Professional Sports Authenticator ("PSA") or Beckett Grading Services ("BGS"), and (iii) slabbed (i.e., encapsulated in a plastic tamper-evident case). Leaf denies the remaining allegations in Paragraph 50 of the Complaint.

51.     Leaf admits the allegations in the first sentence of Paragraph 51 of the Complaint. Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 51 of the Complaint.

52.     Leaf admits the allegations in the first sentence of Paragraph 52 of the Complaint. Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 52 of the Complaint.

53.     Leaf denies the allegations in Paragraph 53 of the Complaint.

54.     Leaf admits the allegations in the first sentence of Paragraph 54 of the Complaint. Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 54 of the Complaint. Leaf admits that the graded/slabbed Mickey Mantle card in the upper right corner of the sell sheet is larger than the other graded/slabbed cards on the sell sheet. Leaf denies the remaining allegations of Paragraph 54 of the Complaint.

55.     Leaf admits that the sell sheet contains (i) the name and image of Babe Ruth on a card produced by Leaf in 1948 pursuant to a license, and (ii) an autograph of Babe Ruth purchased by Leaf on the open market. Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 55 of the Complaint.

56.     Leaf states that the allegation in Paragraph 56 of the Complaint states a legal conclusion to which no response is required.

57.     Leaf states that the allegation in Paragraph 57 of the Complaint states a legal conclusion to which no response is required.

58.     Leaf states that the allegation in Paragraph 58 of the Complaint states a legal conclusion to which no response is required.

59.     Leaf states that the allegation in Paragraph 59 of the Complaint states a legal conclusion to which no response is required.

60.     Leaf denies the allegations in paragraph 60 of the Complaint.

61.     Leaf states that the allegations in Paragraph 61 of the Complaint state a legal conclusion to which no response is required.

62.     Leaf states that the allegations in Paragraph 62 of the Complaint are not allegations of fact to which a response is required.

63.     Leaf admits the allegations in Paragraph 63 of the Complaint.

**COUNT ONE**
**Federal Copyright Infringement (17 U.S.C. § 106)**

64.     Leaf repeats and incorporates its responses to the allegations in Paragraphs 1 through 63 as stated herein.

65.     Leaf lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 65 of the Complaint.

66.     Leaf states that the allegations in Paragraph 66 state a legal conclusion to which no response is required.

67.     Leaf states that the allegations in Paragraph 67 of the Complaint state a legal conclusion to which no response is required.

68.     Leaf states that the allegations in Paragraph 68 of the Complaint state a legal conclusion to which no response is required.

69.     Leaf states that the allegations in Paragraph 69 of the Complaint state a legal conclusion to which no response is required.

70.     Leaf states that the allegations in Paragraph 70 of the Complaint state a legal conclusion to which no response is required.

71.     Leaf states that the allegations in Paragraph 71 of the Complaint state a legal conclusion to which no response is required.

**COUNT TWO**
**Federal Trademark Infringement (16 U.S.C. § 1114(1))**

72.     Leaf repeats and incorporates its responses to the allegations in Paragraphs 1 through 71 as stated herein.

73.     Leaf states that the allegations in Paragraph 73 of the Complaint state a legal conclusion to which no response is required.

74.     Leaf states that the allegations in Paragraph 74 of the Complaint state a legal conclusion to which no response is required.

75.     Leaf states that the allegations in Paragraph 75 of the Complaint state a legal conclusion to which no response is required.

76.     Leaf states that the allegations in Paragraph 76 of the Complaint state a legal conclusion to which no response is required.

77.     Leaf states that the allegations in Paragraph 77 of the Complaint state a legal conclusion to which no response is required.

78.     Leaf states that the allegations in Paragraph 78 of the Complaint state a legal conclusion to which no response is required.

79.     Leaf states that the allegations in Paragraph 79 of the Complaint state a legal conclusion to which no response is required.

80.     Leaf states that the allegations in Paragraph 80 of the Complaint state a legal conclusion to which no response is required.

**COUNT THREE**
**Federal False Designation of Origin (15 U.S.C. § 1125(a))**

81.     Leaf repeats and incorporates its responses to the allegations in Paragraphs 1 through 80 as stated herein.

82.     Leaf states that the allegations in Paragraph 82 of the Complaint state a legal conclusion to which no response is required.

83.     Leaf states that the allegations in Paragraph 83 of the Complaint state a legal conclusion to which no response is required.

84.     Leaf states that the allegations in Paragraph 84 of the Complaint state a legal conclusion to which no response is required.

85.     Leaf states that the allegations in Paragraph 85 of the Complaint state a legal conclusion to which no response is required.

86.     Leaf states that the allegations in Paragraph 86 of the Complaint state a legal conclusion to which no response is required.

87.     Leaf states that the allegations in Paragraph 87 of the Complaint state a legal conclusion to which no response is required.

88.     Leaf states that the allegations in Paragraph 88 of the Complaint state a legal conclusion to which no response is required.

**COUNT FOUR**
**Common Law Trademark Infringement**

89.     Leaf repeats and incorporates its responses to the allegations in Paragraphs 1 through 88 as stated herein.

90.     Leaf states that the allegations in Paragraph 90 of the Complaint state a legal conclusion to which no response is required.

91.     Leaf states that the allegations in Paragraph 91 of the Complaint state a legal conclusion to which no response is required.

92.     Leaf states that the allegations in Paragraph 92 of the Complaint state a legal conclusion to which no response is required.

93.     Leaf states that the allegations in Paragraph 93 of the Complaint state a legal conclusion to which no response is required.

94.     Leaf states that the allegations in Paragraph 94 of the Complaint state a legal conclusion to which no response is required.

**COUNT FIVE**
**Common Law Unfair Competition**

95.     Leaf repeats and incorporates its responses to the allegations in Paragraphs 1 through 94 as stated herein.

96.     Leaf states that the allegations in Paragraph 96 of the Complaint state a legal conclusion to which no response is required.

97.     Leaf states that the allegations in Paragraph 97 of the Complaint state a legal conclusion to which no response is required.

98.     Leaf states that the allegations in Paragraph 98 of the Complaint state a legal conclusion to which no response is required.

**COUNT SIX**
**Injunction**

99.     Leaf repeats and incorporates its responses to the allegations in Paragraphs 1 through 98 as stated herein.

100.    Leaf states that the allegations in Paragraph 100 of the Complaint state a legal conclusion to which no response is required.

101.     Leaf states that the allegations in Paragraph 101 of the Complaint state a legal conclusion to which no response is required.

102.     Leaf states that the allegations in Paragraph 102 of the Complaint state a legal conclusion to which no response is required.

**WHEREFORE**, Leaf denies that Plaintiff is entitled to the relief requested in Paragraphs "A" – "J" of the Prayer of the Complaint as well as any additional relief.

## AFFIRMATIVE AND OTHER DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

103.     The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
### (Waiver, Acquiescence, and Estoppel)

104.     The claims asserted in the Complaint are barred, in whole or in part, by the doctrines of waiver, acquiescence, and estoppel.

### THIRD AFFIRMATIVE DEFENSE
### (Laches)

105.     The claims asserted in the Complaint are barred, in whole or in part, by the doctrine of laches.

### FOURTH AFFIRMATIVE DEFENSE
### (Standing)

106.     Topps lacks standing to assert its claims to the extent that it does not have valid copyrights and/or trademarks.

### FIFTH AFFIRMATIVE DEFENSE
### (Fair Use)

107.     The claims asserted in the Complaint are barred, in whole or in part, by the

doctrine of fair use, nominative fair use and/or descriptive use.

## SIXTH AFFIRMATIVE DEFENSE
### (Section 412)

108. The claims asserted in the Complaint are barred, in whole or in part, by 17 U.S.C. § 412.

## SEVENTH AFFIRMATIVE DEFENSE
### (Innocent Infringement)

109. The claims asserted in the Complaint are barred, in whole or in part, because any infringement, if any, was innocent.

## EIGTH AFFIRMATIVE DEFENSE
### (Statutory Damages)

110. The claims asserted in the Complaint are barred, in whole or in part, because the statutory damages sought are unconstitutionally excessive and disproportionate to any actual damages, if any, that may have been sustained.

## NINTH AFFIRMATIVE DEFENSE
### (First Sale)

111. The claims asserted in the Complaint are barred, in whole or in part, by the first sale doctrine.

## TENTH AFFIRMATIVE DEFENSE
### (Collateral Use)

112. The claims asserted in the Complaint are barred, in whole or in part, by the collateral use doctrine.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

113.    The claims asserted in the Complaint are barred, in whole or in part, by the doctrine of unclean hands.

## TWELTH AFFIRMATIVE DEFENSE
### (Abandonment)

114.    The claims asserted in the Complaint are barred, in whole or in part, by the doctrine of abandonment.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Non-Infringement)

115.    The claims asserted in the Complaint are barred, in whole or in part, because the Defendant has not infringed any applicable trademark or copyright under federal or state law.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

116.    The claims asserted in the Complaint are barred, in whole or in part, by the statute of limitations.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Lack of Irreparable Harm)

117.    Plaintiff's claims for injunctive relief are barred because Plaintiff cannot show that it will suffer any irreparable harm.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Adequacy of Remedy at Law)

118.    The alleged injury or damage suffered by Plaintiff, if any, would be adequately compensated by damages.  Accordingly, Plaintiff has a complete and adequate remedy at law and is not entitled to seek equitable relief.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (Punitive Damages)

119.     Punitive damages are not warranted in this action and/or any recovery of punitive damages are unconstitutional and in violation of federal and/or state law based on the allegations in the Complaint.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (Invalidity/Unenforceability of Copyright)

120.     The claims made in the Complaint are barred, in whole or in part, because Plaintiff's copyrights are invalid and/or unenforceable.

## NINETEENTH AFFIRMATIVE DEFENSE
### (Mitigate Damages)

121.     The claims made in the Complaint are barred, in whole or in part, because of a failure to mitigate damages, if such damages exist.

## TWENTIETH AFFIRMATIVE DEFENSE
### (No Damages)

122.     Without admitted that the Complaint states a claim, there has been no damage in any amount, manner or at all by reason of any act alleged against Defendant in the Complaint, and the relief prayed for in the Compliant therefore cannot be granted.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Duplicative Claims)

123.     Without admitting that the Complaint states a claim, any remedies are limited to the extent that there is sought an overlapping or duplicative recovery pursuant to the various claims for any alleged single wrong.

## TWENTY-SECOND AFFIRMATIVE DEFENSE
### (Fraud)

124.     The claims made in the Complaint are bared, in whole or in part, by fraud on the

United States Patent and Trademark Office.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (Third-Party Use)

125.   The claims made in the Complaint are barred, in whole or in part, by reason of other parties' use of any marks and/or copyrights at issue.

## ADDITIONAL DEFENSES

126.   Leaf reserves the right to assert additional defenses based on information learned or obtained during discovery.

## COUNTERCLAIM

## INTRODUCTION

1.   Leaf requests that this Court confirm and enforce Leaf's rights to use in its marketing scanned images of trading cards and autographs that Leaf purchased on the open market. Leaf's use of the scanned images is clearly "fair use" and "nominal use" of items that Leaf lawfully purchased and is entitled to sell. Moreover, the "first sale doctrine" bars Topps' claim that Leaf's use of the scanned images violated Topps' alleged rights.

## PARTIES

2.   Counterclaim-Plaintiff Leaf Trading Cards, LLC ("Leaf") is a Texas limited liability company with its principal place of business at 15944 Midway Road, Addison, Texas 75001.

3.   Counterclaim-Defendant The Topps Company, Inc. ("Topps") is a Delaware corporation with its principal place of business at 1 Whitehall Street, New York, New York 10004.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction under 15 U.S.C. § 1121, 15 U.S.C. § 2201, 28 U.S.C. § 1331, and 28 U.S.C. § 1338.  Subject matter jurisdiction is further founded on 28 U.S.C. § 1367(a) as a matter of the Court's supplemental jurisdiction.

5.     Personal jurisdiction over Topps is vested in this Court because it conducts business in this district.

6.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1121 (b) and (c) because a substantial portion of the harm sought to be avoided, and a substantial part of the events and omissions which give rise to the claims alleged herein are occurring in this district.

## FACTS

**Leaf and its business**

7.     Leaf began operations in 2010 as a manufacturer and seller of sports trading cards.  Leaf's product lines now include entertainment and celebrity trading cards, and Leaf is expanding into additional sports memorabilia.  Leaf is well-known among collectors for its production of "cut signature" trading cards.   To create those cards, Leaf (i) purchases autographs/signatures in the open market, (ii) cuts the signed item to a signature-only size, and (iii) incorporates the cut signature into a Leaf trading card.  Examples of Leaf's "cut signature" cards are pictured below:

 

8.　　The Leaf trading card brand began in 1948 with the first color edition of post-World War II trading cards.　Leaf purchased the Leaf mark and retained the Leaf logo that has been well-known by collectors for more than six decades:



9.　　Leaf markets and sells its products to dealers and distributors of trading cards and sports memorabilia who then resell Leaf's products to individual collectors.　Leaf does not directly sell its products as a retailer and does not have an online store on its website.

**Trading Cards = Collectibles & Memorabilia = Big Business**

10.　　Trading cards date back to the late-1800's and have long been a fixture of American society.　The public is most likely familiar with sports trading cards, but the industry has expanded to include non-sport trading cards (*e.g.*, games, entertainers, comics).

11.　　The "trading" of cards is no longer limited to schoolboys trading cards that were packaged with bubble gum.　Certain cards are now highly coveted collectibles and high-priced memorabilia, and are considered investment commodities. The sales outlets for trading cards have shifted from neighborhood card shops to a wide-open marketplace of online sellers and resellers, memorabilia stores, auction galleries, and trade shows.

12.     Another court in this District recognized almost twenty years ago that "an enormous secondary market exists for baseball cards and baseball card derivative works." *See Major League Baseball Players Ass'n v. Dad's Kid Corp.*, 806 F. Supp. 458, 460 (S.D.N.Y. 1992) (Owen, J.).  Another court noted that "'[t]he trading card market is now a $2.007 billion industry.  Of that figure, the breakdown is $1.229 billion for baseball cards.'" *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 868 F. Supp. 1266, 1274 n.6 (N.D. Ok. 1994), *aff'd*, 95 F.3d 959 (10th Cir. 1996).  The trading card community of collectors and investors extends to websites, associations, conventions, blogs, message boards, and social media.

**The "Grading" of Trading Cards**

13.     The quality and condition of a trading card is a key factor in determining the "value" of the card on the secondary market, and industry standards have been developed to "grade" trading cards (e.g., a scale from "mint" (the highest grade) to "poor").  The grade of a card is determined by an expert who inspects the card and rates it on such items as printing quality (*e.g.*, centered, sharpness) and condition (*e.g.*, tears, creases, stains).  After comprehensive examination, a grade is assigned to the card and the card is "slabbed," *i.e.*, placed into a clear tamper-resistant holder.  A label is then affixed to the card holder which provides such information as the manufacturer of the card, the year issued, the player's name, and the grade assigned to the card.

14.     Two well-known trading card grading services are Beckett Grading Services ("BGS") (www.beckett.com/grading) and Professional Sports Authenticator ("PSA") (www.psacard.com).  Scanned images of the 11 graded/slabbed Topps cards that are the subject of Topps' Complaint, together with scanned images of the same cards as ungraded/unslabbed, are attached hereto as Exhibit "B" and incorporated herein by reference.

**Trading Card Sellers/Resellers:**
**Routine Use of Topps' Brand Names and Card Images in Advertisements**

15.     Topps complains that Leaf included in its advertising 11 scanned images of Topps cards that Leaf bought in the secondary market.  However, sellers and resellers of sports trading cards routinely advertise their products by displaying the original manufacturer's name and an image of the card.  Virtually every eBay listing for a Topps trading card on eBay includes one or more of the Topps' trade names (*e.g.*,  "Bowman," "Bowman Chrome," and "Topps Chrome") AND an image of the card for sale (whether a scanned image of the actual card or a stock image of the card).

16.     A September 14, 2011 search of eBay listings for the 11 Topps cards that are pictured in Topps' Complaint, evidences that virtually every reseller of those 11 cards uses Topps' trade names and card images in their auction listings.  Those search results are attached hereto as Exhibits "C" – "M" and each exhibit includes (i) the overall results of the search for the subject card, and (ii) one of the individual listings from that search:

Exhibit "C" – 1952 Mickey Mantle

Exhibit "D" – 1958 Mickey Mantle

Exhibit "E" – 1972 Red Sox Rookies

Exhibit "F" – 1980 Rickey Henderson

Exhibit "G" – 2001 Albert Pujols

Exhibit "H" – 2001 Joe Mauer

Exhibit "I" – 2005 Ryan Braun

Exhibit "J" – 2010 Bryce Harper Bowman

Exhibit "K" – 2010 Stephen Strasburg

Exhibit "L" – 2010 Bryce Harper Bowman Chrome

Exhibit "M" – 2011 Bryce Harper

17.     On any given day, there are likely more than one million (1,000,000) Topps products listed for sale/auction on eBay.  For example, September 14, 2011 searches of eBay listings found the following number of items listed for sale/auction (searching in the "title" and "descriptions" of products for sale/auction):

"Topps + Baseball + Card" = <u>1,048,548 items</u>

"Topps" = <u>1,779,264 items</u>

The first page of these search results are attached hereto as Exhibits "N" and "O" and incorporated herein by reference.

## Other Sellers Have Displayed the Topps' Names and Cards in Advertising

18.     Companies other than Topps used the Topps brand names and Topps card images in advertising to sell baseball card products before Leaf was formed.

19.     These products include boxes that contain one or more Topps cards, and the packaging contains the Topps name and images/replicas of Topps cards.  Examples of sellers' use of the Topps name and Topps cards in advertising are attached hereto as Exhibit "P" and incorporated herein by reference.

20.     Upon information and belief, Topps did not grant those companies permission to use the Topps name or Topps card images to advertise baseball card products.

## Leaf 2011 "Best of Baseball"

21.     In the summer of 2011, Leaf produced, marketed, and sold to independent dealers and distributors a product known as Leaf 2011 "Best of Baseball."  That product was packaged in a box that contained two (2) trading cards:

A.    One (1) buyback card graded/slabbed authentic by PSA or BGS.    This card would be a rookie card, autographed rookie card, or pre-1970 vintage card manufactured by various card companies; AND

B.    One (1) premium cut signature card produced by Leaf

22.    Each of the buyback cards was purchased by Leaf on the open market (*e.g.*, eBay, sports memorabilia shows, private sales).  Leaf did not buy any of the buyback cards directly from the manufacturer of the card.

23.    The following images are of the top (left) and bottom (right) of each box in the Leaf 2011 "Best of Baseball" product:

 

24.    The top and bottom of each Leaf box identifies the product as the Leaf 2011 "Best of Baseball."

25.    The seal on the top of each Leaf box states: "Look For Random Certified Autograph and Relic Cards From Baseball's Best, Past and Present!"

26.    The top of each Leaf box includes three (3) Leaf logos.  The bottom of the box also contains the Leaf logo.

27.    Leaf's box does not include the name of the manufacturer of any of the buyback cards available in the Leaf 2010 "Best of Baseball" product.

28.     The Leaf box does not contain a trademark or copyrighted information of any card manufacturer other than Leaf.

29.     The box invites collectors to "VISIT OUR WEBSITE AT www.leaftradingcards.com." The box does not contain the website address of any card manufacturer other than Leaf.

30.     The Leaf 2011 "Best of Baseball" product was sold to dealers at a wholesale price of $555.00 per case. Each case contained three (3) Leaf 2011 "Best of Baseball" boxes. A sealed case of the Leaf "Best of Baseball" product is now offered for sale by someone other than Leaf on eBay at a price at $770.00. A true and correct copy of such eBay listing is attached hereto as Exhibit "Q" and incorporated herein by reference.

31.     The wholesale price for each box of two (2) cards was $185.00. A sealed box of the Leaf 2011 "Best of Baseball" product is now offered for sale by someone other than Leaf on eBay at a price of $274.99 and on Amazon at a price of $279.99. True and correct copies of such eBay listing and Amazon listing are attached hereto as Exhibit "R" and incorporated herein by reference.

**Leaf's "Sell Sheet" for the 2011 "Best of Baseball" product**

32.     The only "advertising" for the Leaf 2011 "Best of Baseball" product was a one-page "sell sheet" (the "Sell Sheet") prepared by Leaf. A copy of the Sell Sheet is attached hereto as Exhibit "A" and incorporated herein by reference.

33.     Trading card manufacturers commonly provide a "sell sheet" to dealers and distributors with information about the content and pricing of an upcoming product.

34.     All of the non-Leaf cards pictured on the Sell Sheet are scanned images of graded/slabbed cards purchased by Leaf on the open market. Leaf did not modify or alter any of

those cards or scanned images. Each of the cards depicted on the Sell Sheet were included in the Leaf 2011 "Best of Baseball" product.

35. Leaf's Sell Sheet only advertised a Leaf product. There was no confusion that Leaf, and not Topps or any other manufacturer, was the seller or sponsor of, or affiliated with, the Leaf 2011 "Best of Baseball" product:

- Leaf's Sell Sheet identified the upcoming product as Leaf's 2011 "Best of Baseball"

- Leaf's logo appeared twice on Sell Sheet. Neither Topps' logo nor any Topps trade name (*e.g.*, Topps, Bowman, Bowman Chrome, Topps Chrome) is depicted on Leaf's Sell Sheet, except as it may appear on the scanned image of a card included on the Sell Sheet

- Leaf is mentioned twice in the text of the Sell Sheet. Topps is not mentioned in Leaf's Sell Sheet text

- Leaf's Sell Sheet contained scanned images of two Leaf 2011 "Best of Baseball" cards. These are the only cards displayed horizontally and are prominently displayed in the middle-left and middle-right sides of Leaf's Sell Sheet

- Leaf's Sell Sheet clearly stated that if a Leaf dealer or distributor wanted to order the Leaf 2011 "Best of Baseball" product, they should:

  * Call Brian Gray (commonly known to be the President of Leaf) at Leaf's telephone number. No other company's telephone number is on Leaf's Sell Sheet

  * E-mail orders@leaftradingcards.com. No other company's e-mail address is on Leaf's Sell Sheet

- Leaf's Sell Sheet invited Leaf's dealers and distributors to "Visit Leaf's website: www.leaftradingcards.com." No other company's website was listed on Leaf's Sell Sheet

- Leaf's Sell Sheet expressly provided that "*All cards pictured and included in the buyback portion of the product were obtained on the open market by Leaf Trading Cards and are officially licensed goods to extent necessary by law. Leaf in no way asserts or implies the endorsement of any personality depicted on these cards, the leagues or organizations who originally licensed these cards, nor the respective original manufacturers of these cards.*"

**Leaf only sends the "Sell Sheet" to Leaf Dealers and Distributors**

36.     On or about July 1, 2011, Leaf sent an e-mail (the "E-mail") to Leaf dealers and distributors which contained the Sell Sheet and accompanying order form (the "Order Form"). A true and correct copy of the Order Form is attached hereto as Exhibit "S" and incorporated herein by reference.

37.     The Order Form identified the "Product Information" as the Leaf 2011 "Best of Baseball!" product. The Order Form included Leaf's logo and mentioned "Leaf" eight (8) times. The Order Form did not contain any images of trading cards. Moreover, the Order Form did not mention Topps, Topps trading cards, or any of Topps' trade names, such as "Bowman," "Bowman Chrome," or "Topps Chrome."

38.     The E-mail, Sell Sheet, and Order Form informed Leaf's dealers and distributors about the basic order information for the 2011 Leaf "Best of Baseball" product:

Each pack (box) contains 2 slabbed/graded cards

3 packs/boxes per case

Factory Cost = $555/case

Order deadline is July 11th

39.     The E-mail, Sell Sheet, and Order Form were sent to approximately 325 Leaf dealers and distributors.

40.     Leaf did not directly market the 2011 Leaf "Best of Baseball" product to end-users/collectors.  Those consumers would buy the Leaf product from Leaf's dealers/distributors.

41.     Leaf did not pay to advertise the 2011 "Best of Baseball" product in print or digital media (*e.g.*, magazines, websites, message boards).

42.     Orders for the Leaf 2011 "Best of Baseball" product were received from Leaf's dealers and distributors during July, 2011.  The product was sold out and no further cases or boxes of the Product were sold by Leaf.

43.     Leaf sold approximately 1,030 cases of the Product.

44.     The Sell Sheet was not posted on Leaf's website until the Leaf 2011 "Best of Baseball" product was sold out.

**No confusion – Leaf 2011 "Best of Baseball" was NOT a Topps product**

45.     On information and belief, none of the Topps cards used by Leaf in the advertising or sale of the Leaf 2011 "Best of Baseball" product are currently for sale by Topps, whether as original or graded/slabbed cards.

46.     On information and belief, Topps has never sold the Topps cards on the Leaf Sell Sheet as individual graded/slabbed baseball cards.

47.     On information and belief, Topps has never sold the Topps cards on the Leaf Sell Sheet as individual baseball cards; rather, they were originally packaged and sold within sets of Topps cards.

48. The only places on the Sell Sheet where Topps' brand names are located are on (i) the scanned images of the graded/slabbed Topps cards that Leaf purchased on the open market, or (ii) the grading label placed on the graded/slabbed Topps cards by BGS or PSA.

49. Topps' brand names are not readily visible on the scanned images of the graded/slabbed cards pictured on the Sell Sheet.

## COUNT ONE

### Declaratory Judgment of Non-Infringement of Trademark

50. Leaf incorporates herein by reference the allegations in paragraphs 1-49 herein.

51. Leaf's Sell Sheet with eleven (11) scanned images of Topps cards that Leaf purchased on the secondary market is no different than the millions of advertisements by trading card sellers and resellers which also include Topps' brand names and images of Topps baseball cards.

52. Leaf's use of scanned card images in the Sell Sheet is legally protected fair and nominal use of the Topps' brand names and card images and does not infringe any federal or state trademark.

53. By accusing Leaf of federal and state trademark infringement and filing the Complaint herein, Topps has created a present and actual controversy between the parties.

54. Topps' actions have caused Leaf to bring this action which is the only means for it to maintain its lawful sale of Leaf's products.

55. Leaf's remedy at law, in the event Topps seeks or obtains injunctive relief, whether a temporary restraining order or a preliminary injunction, is not adequate to compensate Leaf for the injuries threatened or inflicted by Topps.

56. Leaf requests that this Court declare and adjudicate the parties' respective rights

and duties with respect to Leaf's use of the trademarks owned, associated with, or allegedly owned by Topps.

## COUNT TWO

### Declaratory Judgment of Invalidity of Copyrights

57.     Leaf incorporates herein by reference the allegations in paragraphs 1-56 herein.

58.     Topps does not have a Certificate of Registration from the United States Copyright Office evidencing a copyright registration for any of the following trading cards referenced in Topps Complaint:

> Mickey Mantle 1952 card (Complaint ¶¶ 9-10)
>
> Mickey Mantle 1958 card (Complaint ¶ 11)
>
> Red Sox Rookies1972 card (Complaint ¶¶ 13-14)
>
> Rickey Henderson 1980 card (Complaint ¶¶ 16-17)

59.     Leaf requests that this Court declare that Topps does not have copyrights in these cards and adjudicate the parties' respective rights and duties with respect to Leaf's use of the copyrights owned, associated with, or allegedly owned by Topps.

## COUNT THREE

### Declaratory Judgment of Non-Infringement of Copyrights

60.     Leaf incorporates herein by reference the allegations in paragraphs 1-59 herein.

61.     Leaf's Sell Sheet with eleven (11) scanned images of Topps cards that Leaf purchased on the secondary market is no different than the millions of advertisements by trading card sellers and resellers which also include Topps' brand names and images of Topps baseball cards.

62.     Leaf's use of scanned card images in the Sell Sheet is legally protected pursuant

to the "first sale doctrine," is fair and nominal use of the Topps' brand names and card images, and does not infringe any copyright.

63.     By accusing Leaf of copyright infringement and filing the Complaint herein, Topps has created a present and actual controversy between the parties.

64.     Topps' actions have caused Leaf to bring this action which is the only means for it to maintain its lawful sale of Leaf's products.

65.     Leaf's remedy at law, in the event Topps seeks or obtains injunctive relief, whether a temporary restraining order or a preliminary injunction, is not adequate to compensate Leaf for the injuries threatened or inflicted by Topps.

66.     Leaf requests that this Court declare and adjudicate the parties' respective rights and duties with respect to Leaf's use of the copyrights owned, associated with, or allegedly owned by Topps.

**COUNT FOUR**

**<u>Unfair Competition</u>**

67.     Leaf incorporates herein by reference the allegations in paragraphs 1-66 herein.

68.     On information and belief, the purpose of Topps' cease and desist letters to Leaf and the filing of the Complaint is an effort by Topps to exert monopoly in the sports trading card industry and not to enforce their trademarks, copyrights, or any other rights.

69.     Topps knows or should know that its claims of trademark and copyright infringement are without merit.

70.     Topps' claims of trademark and copyright infringement are false, are known by Topps to be false, and were brought only to deprive Leaf of the benefits of its fair use of the means by which it markets its products to customers.

71. Topps has invoked spurious claims under trademark and copyright law and other claims in an attempt to obtain a business advantage beyond the rights afforded Topps under the Lanham Act or other such applicable laws.

72. Topps' actions constitute unfair business practices under applicable state and federal law.

73. Topps' actions are unlawful, unfair, wrongful, malicious, and fraudulent, in that they constitute misuse of federal and state trademark law, the making of frivolous trademark infringement claims, tortious interference with prospective economic advantage, trademark misuse, malicious prosecution, misrepresentation, and other forms of unfair competition.

74. Leaf has suffered and will continue to suffer economic harm from Topps' actions.

## PRAYER FOR RELIEF

WHEREFORE, Counter-Plaintiff Leaf Trading Cards, LLC prays for judgment against Counter-Defendant The Topps Company, Inc. on Leaf's Counterclaim as follows:

a)  For a declaration that Leaf's use of the scanned card images is fair use and does not infringe on any trademark or other right held by Topps;

b)  For a declaration that Topps does not have copyrights in the following trading cards referenced above:

Mickey Mantle 1952 card (Complaint ¶¶ 9-10)

Mickey Mantle 1958 card (Complaint ¶ 11)

Red Sox Rookies 1972 card (Complaint ¶¶ 13-14)

Ricky Henderson 1980 card (Complaint ¶¶ 16-17)

c)  For a declaration that Leaf's use of the scanned card images is fair use and does not infringe on any copyright or other right held by Topps;

d)    For damages to be proven at trial;

e)    For punitive damages;

f)    For Leaf's attorneys' fees and costs through the trial and all appeals of this action; and

g)    Such other and further relief as the Court deems appropriate.


DATED:    New York, New York
          September 15, 2011

                              SORINROYERCOOPER LLC


                              By: /s/ Barry L. Cohen
                                    Barry L. Cohen
                                    Alan S. Gruber
                              515 Madison Avenue, 13th Floor
                              New York, NY  10022
                              Phone:  (212) 600-2085
                              Fax:  (212) 588-1710
                              bcohen@sorinroyercooper.com

                              O. Luke Davis, III  (*pro hac* motion to be filed)
                              Glast, Phillips & Murray, P.C.
                              One Galleria Tower, Suite 2200
                              13355 Noel Road, L.B. 48
                              Dallas, Texas  75240-6657
                              Phone:  (972) 419-8300
                              Fax:  (972) 419-8329
                              oldavis3@gpm-law.com

                              *Attorneys for Defendant/Counterclaim-Plaintiff
                                  Leaf Trading Cards, LLC*